UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DOUG SCHWEGMAN, d/b/a Schwegman )
Insurance and Financial Services, )
 )
        **Plaintiff,** )
 )
v. ) Case No. 16-CV-0730-CVE-FHM
 )
CONTINENTAL CASUALTY COMPANY, )
 )
        **Defendant.** )

**OPINION AND ORDER**

Now before the Court is defendant's motion to dismiss (Dkt. # 18), which the Court will treat as a motion for summary judgment under Federal Rule of Civil Procedure 56. See Dkt. # 23. Defendant asks the Court to grant summary judgment in its favor, arguing that plaintiff has failed to present evidence to support his claims for breach of contract and breach of the duty of good faith and fair dealing. Dkt. # 29, at 6. Plaintiff asserts that he has presented sufficient evidence to support his claims. Dkt. # 31, at 22. Alternatively, plaintiff asks the Court to defer ruling on the motion as to plaintiff's claim for breach of the duty of good faith and fair dealing until plaintiff has had the opportunity to conduct additional discovery. Id. at 23.

**I.**

Plaintiff is an insurance agent and the owner of Schwegman Insurance and Financial Services. Dkt. # 22-1, at 1. In 2009, plaintiff sold Brook Trotter a long-term disability policy with Fort Dearborn National Life Insurance Company (Fort Dearborn) that covered Trotter and the one other employee of Trotter's painting company. Dkt. # 22-1, at 1; Dkt. # 31-3, at 12. In late 2011 or early 2012, Trotter and plaintiff entered into an oral partnership agreement, under which the two

would work together to sell insurance. Dkt. # 18-3, at 2-5; Dkt. # 22-1, at 2. Trotter sold his painting company and became licensed to sell accident, health, and life insurance. Dkt. # 18-3, at 3; Dkt. # 22-1, at 1. Once Trotter sold his painting company, he was the only individual covered under the Fort Dearborn policy. On July 1, 2012, Fort Dearborn cancelled Trotter's policy because enrollment was below the minimum required for renewal. Dkt. # 31-1, at 11.

In November 2012, Trotter sued plaintiff in the District Court of Washington County, State of Oklahoma asserting four causes of action: dissolution of partnership, accounting of joint assets, temporary injunction, and breach of contract (Trotter lawsuit). Dkt. # 18-3, at 2-5. Trotter alleged that plaintiff breached their partnership agreement in July 2012 when plaintiff told Trotter that Trotter could no longer be involved in the business. Id. at 2-5. During discovery in the Trotter lawsuit, plaintiff sent Trotter a set of interrogatories asking Trotter to, inter alia, identify all damages he was asserting in the lawsuit. Dkt. # 18-4, at 6. Trotter's response included the following claim for damages:

Professional Negligence - disability policy

(a) Amount of Damages: $960,000.00;

(b) Calculation of Damages: $ 48,000.00 (diminished earning capacity) times 20 years (years of work left for Plaintiff). Diminished earning capacity is based upon the difference between what contract promised, a minimum of "six figures a year" or $100,000.00 and percentage of that amount payable by policy;

(c) Documents: Ft. Dearborn disability insurance policy, notice from Ft. Dearborn to Defendant, cancelled checks to Defendant for monthly payment of premiums;

(d) Negligence: Plaintiff was in a high risk category because of pre-existing conditions but as part of the agreement with Defendant, disability insurance coverage was arranged. Despite Plaintiff timely paying all premiums and

2

doing nothing to void the insurance, Defendant negligently allowed the
policy to lapse.

Id. at 7.

Plaintiff was insured under a professional liability policy issued by defendant (Continental policy). Dkt. # 18-2. Under the Continental policy, defendant has the duty to defend plaintiff from claims that fall under the policy. Id. at 12. Claims included in the policy are "written demand[s] for monetary or non-monetary damages, or civil adjudicatory . . . proceeding[s] for monetary damages, against an Insured for a Wrongful Act." Id. at 6. Wrongful Act is defined as "any actual or alleged negligent act, error or omission in . . . the rendering or failure to render Professional Services." Id. at 10. Professional Services is defined as "those services arising out of the conduct of the Insured's business as a licensed Agent." Id. at 23.

On July 12, 2013, plaintiff sent a letter informing defendant about the Trotter lawsuit, in which plaintiff told defendant that he believed Trotter was asserting a professional negligence claim that might be covered by the Continental policy. Dkt. # 18-4, at 2. To support his request for defendant to defend him in the Trotter lawsuit, plaintiff attached Trotter's interrogatory response. Id. at 3-10. On August 23, 2013, defendant sent plaintiff a letter informing him that defendant determined that the Trotter lawsuit was not covered by the Continental policy. Dkt. # 31-3, at 24. Defendant concluded that Trotter's first three claims were not covered because they were for non-monetary or injunctive relief. Id. at 26. Additionally, defendant found that Trotter's breach of contract claim was not covered because it arose out of a contract between business partners, not plaintiff rendering professional services as an insurance agent. Id. at 26-28.

In September 2016, Trotter dismissed his suit against plaintiff after the parties reached a settlement. See Motion to Dismiss, Trotter v. Schwegman, No. CJ-2012-352 (Okla. Dist. Ct. Sep.

3

29, 2016); Order of Dismissal, Trotter v. Schwegman, No. CJ-2012-352 (Okla. Dist. Ct. Sep. 29, 2016).[1] On August 19, 2015, plaintiff filed this suit in the District Court of Washington County. Dkt. # 2, at 10. Defendant removed the suit to this Court on December 5, 2016. Id. at 1. Plaintiff alleges claims for breach of contract and breach of the duty of good faith and fair dealing implied in all insurance contracts. Id. at 12. Defendant moved to dismiss plaintiff's claims against it for failure to state a claim under Rule 12(b)(6). Dkt. # 18. Because defendant's motion and plaintiff's response presented matters outside the pleadings, the Court informed the parties that it must treat defendant's motion as one for summary judgment under Rule 56. Dkt. # 23. The parties were given the opportunity to present additional materials for the Court to consider, and both parties filed supplemental briefs and exhibits (Dkt. ## 29, 31) pursuant to the Court's order.

**II.**

Summary judgment pursuant to Rule 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

---

[1] Neither party provided the Court with information regarding the resolution of the Trotter lawsuit. However, a court may take judicial notice of "matters that are verifiable with certainty." St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979). Such matters include public court records. See Moore v. Tulsa, 55 F. Supp. 3d 1337, 1341-42 (N.D. Okla. 2014).

4

rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Id. at 327 (quoting Fed. R. Civ. P. 1).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." Id. at 251-52. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

### A.

Defendant argues that the Court should grant summary judgment in its favor on plaintiff's breach of contract claim because Trotter did not assert a claim for professional negligence against plaintiff. Dkt. # 32, at 2. Plaintiff argues that defendant had the duty to defend him in the Trotter lawsuit because the facts underlying Trotter's claims gave rise to the potential of liability under the Continental policy. Dkt. # 31, at 13. This suit is before the Court pursuant to its diversity jurisdiction; thus, the Court must look to Oklahoma law on an insurer's duty to defend. See Automax Hyundai S., L.L.C. v. Zurich Am. Ins. Co., 720 F.3d 798, 804 (10th Cir. 2013).

Under Oklahoma law, courts look to the governing principles of contract law to interpret an insurance policy. First Bank of Turley v. Fidelity & Deposit Ins. Co. of Md., 928 P.2d 298, 302 (Okla. 1996). The terms of a contract are construed according to their plain meaning with any ambiguities "construed liberally in favor of an insured and strictly against the insurer." Cont'l Cas. Co. v. Beaty, 455 P.2d 684, 688 (Okla. 1969). An insurance policy usually contains two duties: the duty to defend and the duty to indemnify the insured. Id. at 302-03. The duty to defend is broader than the duty to indemnify, but it is not without limit. Id. at 303. In describing an insurance company's duty to defend, the Oklahoma Supreme Court has stated:

> An insurer has the duty to defend an insured whenever it ascertains the presence of facts that give rise to *the potential of liability* under the policy. The insurer's defense duty is determined *on the basis of information* gleaned *from the petition (and other pleadings, from the insured* and *from other sources available to the insurer* at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action.

Id. at 303-04 (footnotes omitted). Facts give rise to a potential of liability when there is a "*possibility of recovery* under the policy; there *need not be a probability of recovery*." Id. at 303 n.14. "The duty to defend should *focus upon the facts* rather than upon the complaint's allegations, which may or may not control the ultimate determination of liability." Id. at 303 n.13; see also Utica Mut. Ins. Co. v. Voyles, 277 F. App'x 809, 812 (10th Cir. 2008)[2] ("Oklahoma does not recognize the four-corners rule followed by some courts. A court must look beyond the language of the complaint to determine whether a duty to defend exists.").

The parties agree that the petition in the Trotter lawsuit does not, on its own, obligate defendant to defend plaintiff. Dkt. # 22, at 4 (plaintiff stating that he did not initially notify

---

[2] This and all other unpublished opinions are not precedential, but they may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

defendant of the Trotter lawsuit because it appeared to relate only to plaintiff and Trotter's business relationship). Trotter's first three claims, for dissolution of partnership, accounting of joint assets, and a temporary injunction, are claims for non-monetary or injunction relief, which are explicitly excluded from coverage under the Continental policy. Dkt. # 18-2, at 6 ("Claim does not include a demand or proceeding for non-monetary or injunctive relief."). And Trotter's final claim, for breach of contract, concerns the dissolution of the business partnership and makes no mention of facts that could support a claim of professional negligence. See generally Dkt. # 18-3, at 2-5.

However, plaintiff has presented evidence that Trotter claimed damages for his breach of contract claim that were caused by plaintiff's alleged professional negligence. First, in his answers to plaintiff's interrogatories, Trotter indicated that he was asserting damages from the lapse of the Fort Dearborn policy, which Trotter attributed to plaintiff's negligence. Dkt. # 18-4, at 7. Second, Trotter's deposition testimony from the Trotter lawsuit shows that he believed he had a claim for professional negligence against plaintiff for his handling of the Fort Dearborn policy. Dkt. # 31-3, at 19 ("Q: When, during the time period . . . that Mr. Schwegman was acting as your insurance agent, was there ever a time period that, in your opinion, he negligently handled your business? A: Yes Q: And which policy do you believe he negligently handled? A: The Fort Dearborn disability."). Third, Trotter must have thought the Continental policy was relevant to his claims because plaintiff and Trotter engaged in an extended discovery dispute during the Trotter lawsuit over plaintiff's failure to produce a copy of the Continental policy.[3] See Dkt. ## 31-2; 31-3, at 1-7. Thus, the question for the Court is whether, under Oklahoma law, a lawsuit in which the plaintiff asserts

---

[3] Plaintiff did eventually produce a copy of the Continental policy to Trotter. Dkt. # 31-3, at 7.

damages, but not a separate claim, arising from professional negligence creates the possibility of recovery under a professional negligence insurance agreement. As the Oklahoma Supreme Court has not addressed this question, the Court must predict how that court would rule. Lamb v. Rizzo, 391 F.3d 1133, 1137 (10th Cir. 2004).

There are several reasons to believe the Oklahoma Supreme Court would find that an insurer in this situation would have the duty to defend. First, the Oklahoma Supreme Court has emphasized that courts must look beyond the petition when considering whether an insurer had the duty to defend. The focus should be on the facts giving rise to the suit, not the allegations contained in the petition. See Turley, 928 P.2d 303 n.13. Moreover, whether an insurer has the duty to defend is determined by looking not only at the petition, but also other pleadings, information from the insured, and any other information available to the insured at the time. See id. at 304. Plaintiff has provided evidence that, at the time plaintiff notified defendant of the Trotter lawsuit, defendant could have asked plaintiff for more information about the Fort Deaborn policy[4] and determined that Trotter was asserting damages arising from plaintiff's handling of a long-term disability policy that plaintiff sold Trotter years before their business relationship began.

Second, Trotter still had time to amend his petition to add a professional negligence claim. When Trotter asserted damages caused by plaintiff's professional negligence in June 2013, the Trotter lawsuit was in the relatively early stages of litigation; discovery continued in the case for more than three years after plaintiff notified defendant about the suit. Dkt. # 29-1, at 2-5. According

---

[4] The Continental policy applies only to claims reported to defendant within the time period provided in the agreement. Dkt. # 18-2. Whether, by failing to provide defendant with more than Trotter's interrogatory response, plaintiff's notice was "so defective as to amount to nonperformance of [his] notice-giving duty, or . . . so deficient or inadequate as to excuse [defendant's] duty to defend . . . , presents an issue of fact." Turley, 928 P.2d at 306.

to the discovery master's report, no scheduling order was ever entered in the Trotter lawsuit. Initial Report of Discovery Master, Trotter v. Schwegman, No. CJ-2012-352 (Okla. Dist. Ct. Sep. 14, 2016).[5] Under the procedural rules for Oklahoma district courts, one of the topics to be addressed at scheduling and pretrial conferences is "the necessity or desirability of amendments to the pleadings." Okla. R. Dist. Ct. 5(G)(2). Trotter would not have been able to amend his petition without leave of the district court, but "leave shall be freely given when justice so requires." Okla. Stat. tit. 12, § 2015. Defendant argues that if it had the duty to defend here, then insurers would have the duty to defend any time a professional negligence claim could possibly be brought. Dkt. # 32, at 4. But defendant's argument ignores the fact that not only could Trotter bring a professional negligence claim here, but also that he was <u>already asserting professional negligence damages</u>. This is not a case of the insured asserting that the insurer defend him against some nebulous claim that someone could assert against him. This is a case of a plaintiff filing pleadings that display the plaintiff's wish to bring a professional negligence claim against the insured, but going about it the wrong way.[6]

---

[5]   The Court takes judicial notice of the discovery master's report. See supra note 1.

[6]   It is unclear from the record why Trotter's lawyer never moved to amend the petition to add a claim of professional negligence. Given defendant's focus on the petition, this case would probably have been avoided entirely had Trotter's lawyer done so. However, Trotter's lawyer is not the only one who could have prevented this litigation. It appears that defendant's refusal to defend plaintiff was premised on the mistaken belief that the insurance policy referenced in Trotter's interrogatory response was a part of plaintiff and Trotter's business agreement. See Dkt. # 31-3, at 24-30. Defendant could have avoided its mistaken belief by requesting information on the Fort Dearborn policy mentioned in Trotter's interrogatory response. On the other hand, plaintiff could have corrected defendant's misunderstanding as soon as defendant issued its decision letter. But see Dkt. # 32, at 7 (defendant asserting that, if it had asked plaintiff for additional information before denying to defend him, it would not have affected its decision).

Third, in disputes between an insurer and an insured, the Oklahoma Supreme Court has shown itself to generally favor the insured. The Supreme Court has found that insurance policies should be "construed liberally in favor of an insured and strictly against the insurer." Beaty, 455 P.2d at 688. Additionally, an insurer has the duty to defend an insured when there is a <u>mere possibility</u> of recovery under the policy. Turley, 928 P.2d at 303 n.14. The Oklahoma Supreme Court's opinions on insurance coverage disputes evince an outlook that, when there are doubts about coverage, they should be resolved in favor of the insured. Based on these factors, the Court finds that the Oklahoma Supreme Court would hold that a plaintiff asserting damages, but not a separate claim, arising from an insured's professional negligence would have the duty to defend the insured under a professional negligence insurance policy. Therefore, defendant's motion for summary judgment should be denied as to plaintiff's breach of contract claim.

**B.**

Defendant also argues that it is entitled to summary judgment on plaintiff's claim for breach of the duty of good faith and fair dealing. Dkt. # 32, at 5-7. Under Oklahoma law, "[a]n insurer has an 'implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.'" Badillo v. Mid Century Ins. Co., 131 P.3d 1080, 1093 (Okla. 2005) (quoting Christian v. Am. Home Assurance Co., 577 P.2d 899, 901 (Okla. 1977)). As the Tenth Circuit has explained, there are four elements to a claim for breach of the duty of good faith and fair dealing against an insurer under Oklahoma law:

> (1) the insured was entitled to coverage under the policy; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the insured; and (4) the insurer's violation of the duty of good faith was the direct cause of the insured's injury.

Automax, 720 F.3d at 810 (citing Ball v. Wilshire Ins. Co., 221 P.3d 717, 724 (Okla. 2009)).

Defendant's only argument to support its motion for summary judgment on this claim is that it fails as a matter of law because plaintiff was not entitled to coverage under the Continental policy. Dkt. # 18, at 14-15; Dkt. # 29, at 6; Dkt. # 32, at 5-7. As discussed above, plaintiff has presented sufficient evidence to support his assertion that he was entitled to coverage for the Trotter lawsuit. See supra Part III.A. Thus, defendant's motion for summary judgment should also be denied as to plaintiff's breach of the duty of good faith and fair dealing.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Dkt. # 18) is **denied**.

**IT IS FURTHER ORDERED** that the stay on discovery is **lifted**. The Court will enter a new scheduling order.

**DATED** this 5th day of May, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE